IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kendall Marcellais Reed (#20210519104), | ) |
| Plaintiff, | ) |
| | ) Case No. 23 C 14588 |
| v. | ) |
| | ) Hon. Robert W. Gettleman |
| Black, et al., | ) |
| Defendants. | ) |

**ORDER**

    Plaintiff's renewed application for leave to proceed *in forma pauperis* [6] is granted. The Court orders the trust fund officer at Plaintiff's place of incarceration to deduct $30.16 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to continue making monthly deductions in accordance with this order. The Court has reviewed Plaintiff's complaint [1] pursuant to 28 U.S.C. § 1915A, and dismisses it for failure to state a claim. Plaintiff is granted until February 23, 2024, to submit an amended complaint that states a federal claim. If Plaintiff does not comply, the Court will dismiss this case for failure to state a claim. Plaintiff is reminded that he must promptly submit a change-of-address notification if he is transferred to another facility. The Clerk is directed to send Plaintiff an amended civil rights complaint form, instructions, and a copy of this order.

**STATEMENT**

    Plaintiff Kendall Marcellais Reed, a detainee at Cook County Jail, brings this *pro se* civil rights action, 42 U.S.C. § 1983, claiming failure to protect and inadequate medical care. Before the Court are Plaintiff's complaint and his amended application for leave to proceed *in forma pauperis*.

    Plaintiff has demonstrated that he cannot prepay the filing fee, and thus, his amended application for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. § 1915(b)(1), (2), the Court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $30.16 to the Clerk of Court for payment of the initial partial filing fee and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the trust fund officer to ensure that a copy of this order is mailed to each facility where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and should clearly identify Plaintiff's name and the case number assigned to this case.

The Court next considers Plaintiff's complaint. Under 28 U.S.C. § 1915A, the Court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiff alleges the following. On December 27, 2022, Plaintiff was involved in a verbal altercation with another inmate when that inmate grabbed a broom and struck Plaintiff. (Dkt. 1, pg. 4.) A few moments later, Officer Black came on the deck and took the broom from the inmate. (*Id.*) He told the inmates that he would not report the incident, but warned them if "y'all don't stop" he would cancel barber shop for that day and the next. (*Id.*) The other inmate told Officer Black that "everything was over", and Officer Black left with the broom. (*Id.*)

Once Officer Black was gone, the other inmate began verbally threatening Plaintiff. (*Id.*) The other inmate followed Plaintiff to the bathroom where a "small confrontation" occurred. (*Id.*) Officer Black returned to the deck and again told them that if they didn't stop, he would cancel barber shop, the TV would go off, and the deck would be on lockdown. (*Id.*) The rest of the inmates told Plaintiff and the other inmate to "be cool", and they told Officer Black that "the situation was dead". (*Id.*) Officer Black left the tier again. (*Id.*)

The other inmate now told Plaintiff that he would jump Plaintiff if he got "their visit cancelled". (*Id.*, pg. 5.) Plaintiff went to the bathroom again. (*Id.*) The other inmate came into the bathroom with a cane and struck Plaintiff in the hand. (*Id.*) Plaintiff had put up his hand to block the cane and his hand was split between his thumb and pointer finger. (*Id.*) He ultimately had to get stitches. (*Id.*) Officer Black returned to the tier and ignored Plaintiff's bloody hand. (*Id.*) He ordered everyone back to the bunk, but the other inmates convinced him that nothing further was going to happen. (*Id.*)

Officer Black left again, and the other inmate spit on Plaintiff. (*Id.*) Plaintiff spit back, squared up to the inmate, and "ran up on him". (*Id.*) The other inmate then tackled Plaintiff to the ground, which knocked Plaintiff unconscious, and struck Plaintiff in the face, breaking his jaw. (*Id.*)

Plaintiff was treated at an outside hospital. (*Id.*) He had to have surgery and a plate put in to repair his jaw. (*Id.*) He was on a liquid diet for a month. (*Id.*) He continues to have discomfort when chewing. (*Id.*) The doctor at the hospital told Plaintiff that he would have the stitches in his hand removed in .ten days. (*Id.*, pg. 6.) On January 8, 2023, Plaintiff asked a nurse at the jail when he would have his stitches removed, and she said that he would have an appointment coming up soon. (*Id.*) Plaintiff told her about the ten-day timeframe and that he was having discomfort, and she told Plaintiff to let the doctor know. (*Id.*) On January 13, 2023, Plaintiff saw a doctor at the jail and told the doctor that his stitches had still not been removed and he was feeling discomfort. (*Id.*) He also told the doctor that it was past the ten days. (*Id.*) The doctor informed Plaintiff that he had an appointment with a hand specialist who would take the stitches out. (*Id.*) This appointment "turn[ed] out" to be for "a completely separate issue". (*Id.*) The stitches ended up ripping though Plaintiff's skin and he had to take some out on his own. (*Id.*) Plaintiff has scar tissue and spreading discomfort. (*Id.*)

This lawsuit followed. Plaintiff names Officer Black, the Jane Doe nurse, and the John Doe doctor as Defendants. He seeks compensatory damages.

Plaintiff cannot proceed on the current complaint.

Plaintiff first fails to state a claim for failure to protect. Because Plaintiff is a pretrial detainee, his claims arise under the Fourteenth Amendment's Due Process Clause. *See Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). To survive initial review, Plaintiff must (among other things) point to facts that plausibly suggest that the named defendants "made an intentional decision regarding" Plaintiff's conditions of confinement and "those conditions put [Plaintiff] at substantial risk of suffering serious harm." *See Kemp v. Fulton County*, 27 F.4th 491, 496 (7th Cir. 2022). Put another way, Plaintiff's allegations must plausibly suggest that a reasonable officer in the position of the named defendants would have recognized that he faced a substantial risk of harm and acted unreasonably in the face of that risk. *See Silva v. Read*, No. 21-3029, 2022 WL 4103622, at *2 (7th Cir. Sept. 8, 2022) (unreported decision) (citing *Kemp*, 27 F.4th at 496-97).

Plaintiff's allegations concerning Officer Black show merely that he witnessed Plaintiff and the other inmate engaged in, what was from Black's knowledge, a mild confrontation, and Officer Black did not ultimately resolve the conflict. The conduct that Black witnessed is not the type that would necessarily alert an officer to the fact that there was an imminent or substantial threat to Plaintiff's safety. Undoubtedly inmate disputes like these are common in jail and often do not escalate to significant violence. Notably, Plaintiff does not allege that he ever voiced to Black that he felt unsafe or asked to be separated from the other inmate, despite numerous interactions with Black and thus opportunities to do so. To the contrary, Plaintiff pleads that the inmates instead repeatedly assured Black that the dispute was over and requested to remain out on the tier, and Plaintiff never stated or suggested otherwise. *See generally Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (explaining that inmate's "vague statement that inmates were pressuring him and asking questions were simply inadequate to alert the officer to the fact that there was a true threat at play") (internal quotation marks omitted).

3

Moreover, during the final confrontation with the other inmate that led to Plaintiff's injured jaw, Plaintiff's own allegations show that he was a willing participant in the fight (he spat back), and then that he himself escalated the violence (he squared and ran up to the other inmate). The Constitution does not provide redress for self-created injuries that result from instigating violence. *See, e.g., Clark v. Johnson,* 181 F. App'x 606, 607 (7th Cir.2006) ("[T]he risk to [plaintiff] was of his own making, and prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner."); *Lemmons v. Durant,* No. 10–3030, 2011 WL 4633104, at *3 (C.D. Ill. Oct.4, 2011) (finding that plaintiff who instigated the fight did not establish a constitutional violation because "starting a fight or voluntarily participating in one and then getting the worst of it does not create a failure to protect claim"); *see also Hailey v. Kaiser,* 201 F.3d 447 (10th Cir.1999) (finding no section 1983 liability where plaintiff was the aggressor in fight because defendants were not the proximate cause of plaintiff's injury).

For all these reasons, as pleaded, Plaintiff has failed to state a claim for failure to protect against Officer Black. Plaintiff has not raised an inference that Black acted unreasonably in response to an obvious risk.

Plaintiff also, it appears, seeks to recover for constitutionally inadequate medical care because of the delay in removing his stitches. Again, because he is a pretrial detainee, this claim is governed by the objective reasonableness standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022); *Hardeman v. Curran*, 933 F. 3d 816, 823 (7th Cir. 2019). This requires an assessment of Defendants' conduct to determine if they purposefully, knowingly, or recklessly acted in an objectively unreasonable way in regard to a serious medical condition. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). Negligence, or even gross negligence, is insufficient to state a claim. *Id.* (requiring allegations of "something akin to reckless disregard").

The Court will assume for screening purpose that Plaintiff's need to have stitches removed was a serious need. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (condition is objectively serious if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain.").

But Plaintiff's one-time interaction with each the jail nurse and doctor do not describe unreasonable conduct on their parts. Plaintiff alleges that the nurse referred plaintiff to the jail doctor and the jail doctor referred him to the hand specialist to have the stitches removed. Although apparently the visit with the hand specialist (time not specified) was for something else, nothing in the complaint suggests that the jail doctor did not in fact believe that Plaintiff's stitches would be removed at that appointment. That understanding appears reasonable to the Court, at least based on Plaintiff's current allegations as pleaded. Overall, Plaintiff's descriptions of his limited interactions with the jail medical staff (in which, again, they appeared to have been reasonably responsive) is insufficient to alone support a constitutional claim. *See Owens v. Duncan*, 788 Fed. App'x 371, *1 (7th Cir. Sept. 18, 2019) (upholding dismissal at screening of claims against four prison staff members who allegedly denied prisoner care or medication through his request at "sick call" because each such staff member had a "single interaction" with the prisoner, and those "limited interactions" did not give rise to a plausible claim that they knew

4

prisoner had a serious condition yet acted with indifference); *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011); *see Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) (rejecting medical care claim when an inmate "was under active treatment; no one was ignoring him"); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (holding that because a correctional institution must provide "adequate medical care," not "unqualified access to healthcare," inmates are not entitled to receive the treatment of their choice on demand).

For these reasons, Plaintiff has failed to state a claim for inadequate medical care.

Accordingly, the Court dismisses Plaintiff's complaint for failure to state a claim. "Judges ordinarily should give a *pro se* plaintiff at least one opportunity to amend a complaint unless amendment would be futile." *Wade v. Barr*, 775 F. App'x 247, 248 (7th Cir. 2019) (unpublished opinion) (citing *Perez v. Fenoglio*, 792 F.3d 68, 783 (7th Cir. 2015)); *see also Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (in this circuit, it is the usual procedural practice to grant prisoner plaintiffs leave to amend, given litigants' prerogative to amend once as a matter of right). The Court therefore grants Plaintiff the opportunity to submit an amended complaint on the Court's required form if he believes that he can assert an actionable federal claim.

The Court reminds Plaintiff that the Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016); *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Ebmeyer v. Brock*, 11 F.4th 537, 541 (7th Cir. 2021) (quoting *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999)). In order to satisfy the PLRA[s exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Crouch*, 27 F.4th at 1320 (quoting *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004)). An inmate must comply with the rules established by the State with respect to the form, timeliness, and content of grievances. *Jones v. Pfister*, No. 17 CV 8789, 2021 WL 1020996, at *6 (N.D. Ill. Mar. 17, 2021) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002)). If a prisoner fails to properly avail himself of the prison's or jail's grievance process, he may lose his right to sue. *Malcom*, 2020 WL 4273993, at *3 (citations omitted); *Jones*, 2021 WL 1020996, at *6 (same; citation omitted).

If Plaintiff chooses to submit an amended complaint, it must be submitted on the Court's required form. *See* Local Rule 81.1. Plaintiff must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. Plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all defendants must be set forth in the amended complaint without reference to the original complaint. Any exhibits Plaintiff wants the Court to consider in its threshold review of the amended complaint also must be attached. Plaintiff is advised to keep a copy for his files.

      The Clerk is directed to send Plaintiff a copy of this order and a blank amended complaint form.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: January 19, 2024**